UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SCHULTE, ROTH & ZABEL,
LLP,

       Appellant,

v.                        CASE NO.  8:02-CV-45-T-17TBM

LARRY S. HYMAN,
DISBURSING AGENT,

       Appellee.

_____/

ORDER

This cause is before the Court on:

   Dkt. 19  Motion for Reconsideration
   Dkt. 21  Response
   Dkt. 24  Notice of Supplemental Authority
   Dkt. 25  Notice of Supplemental Authority
   Dkt. 26  Notice of Supplemental Authority`
   Dkt. 29  Notice of Supplemental Authority

The Court regrets the long delay in the disposition of the
pending motions in this case, which was occasioned by the demands
of the Court's criminal docket.

A motion for reconsideration is generally reserved for
certain limited situations, such as the discovery of new
evidence, an intervening development or change in controlling
law, or the need to correct a clear error or prevent a manifest
injustice.

The Court recognizes the need to clarify the Court's prior
Order (Dkt. 18), which Appellant has misunderstood.  This Court
affirmed the Bankruptcy Court orders which granted summary
judgment against Appellant in a preference action under 11 U.S.C.

Case No. 8:02-CV-45-T-17TBM

Sec. 547, a final judgment as to the summary judgment, and a denial of a motion for reconsideration (Dkt. 1).   The Bankruptcy Court found that a payment was made to Appellant on account of an antecedent obligation, made for the benefit of a creditor, made while Debtor was insolvent and made within 90 days preceding the filing of bankruptcy.   The Bankruptcy Court further found that, if this case were a liquidation Chapter 7 case, the payment enabled Appellant to receive more than it would have received than other creditors in the same legal class.

Debtor paid two invoices for services rendered by Appellant. One invoice was dated January 16, 1998, and covered services rendered from November 17, 1997 through December 31, 1997, in the amount of $60,914.44.   The second invoice, dated March 19, 1998, covered services rendered from January 1, 1998 through February 28, 1998, in the amount of $303.270.55.   Appellant received a wire transfer of $325,000 on March 30, 1998, the day before Chapter 11 petitions were filed by the Harloff entities.   Of the $325,000, $21,729.55 was applied against a portion of the fees and expenses of Appellant from March 1, 1998 through March 30, 1998.   Appellant agreed to represent Debtors in their Chapter 11 cases without any pre-petition retainer, and, in doing so, forgave pre-petition fees in the approximate amount of $17,264, and costs of $358.

The Bankruptcy Court held a non-evidentiary hearing on Appellant's Fee Applications on September 13, 1999, at which the Unsecured Creditors' Committee and the U.S. Trustee raised objections as to the hourly rate and amount of time. (Transcript, Complaint, Exh. B).   Appellee did not file a written objection, but did object (Transcript, p. 23, l. 9-p. 25, l. 8).   Appellee

2

Case No. 8:02-CV-45-T-17TBM

stated that the Disbursing Agent was pursuing claims and considering filing a lawsuit against Appellant for the preference of getting paid just the date before the Petition for three months of pre-petition work.

There were two fee applications pending at the time of the hearing, and a supplement.  One application covered services commencing on March 31, 1998, and one covered services from August 1, 1998 through April 26, 1999 (Transcript, p.4, p. 7). At the hearing, Appellant admitted the amount of pre-petition payments the law firm received and the dates of payment.  There was no discussion of the source of the payment.  Appellant testified that Appellant was originally retained for restructuring the Debtors' obligations to avoid bankruptcy, and until March 17, 1998, Appellant did not render any services related to bankruptcy proceedings (Transcript, p. 53).  On September 27, 1999, the Bankruptcy Court entered Orders allowing compensation (Bk. Dkts. 252A, 607).

Appellee brought the preference action based on the claim that the bankruptcy estate was reduced by $325,000 due to payment to Appellant, and the payment was recoverable from Appellant. This Court found that res judicata did not bar Appellee's preference action, the Bankruptcy Court did not err in its finding that the payment of $325,000 was not made within the ordinary course of business, and the Bankruptcy Court did not err in finding that the "earmarking doctrine" did not apply because there was no "new creditor" and the bankruptcy estate was diminished by the $325,000 payment.

3

Case No. 8:02-CV-45-T-17TBM

Appellant seeks reconsideration of the Order affirming the ruling of the Bankruptcy Court (Dkt. 18).  Appellant argues that the Court based its ruling on the conclusion that Appellant's disclosure was inadequate, an issue not considered by the Bankruptcy Court, or in this appeal by any party, and therefore not briefed, and which is not encompassed by the record on appeal.  Appellant offers additional supporting documents for its contention that the District Court's ruling is erroneous.

Appellee has filed its Response in opposition to the Motion for Reconsideration.

The Court has reviewed the Complaint, with attached affidavit and transcript, the Motion for Reconsideration and Response, the Bankruptcy record, as well as the documents with which Appellant supplemented the record.

I.  Res Judicata

In its prior order, the Court found that the source of the funds for payment of pre-petition attorney's fees was not adequately disclosed, that the finding of "disinterestedness" in the initial retention order was not res judicata, that the ruling of the Bankruptcy Court as to the final fee application was not res judicata, and that the confirmation order of the Reorganization Plan does not preclude the pursuit of the preference claim.  The Court found that the Bankruptcy Court did not err in the entry of summary judgment to Appellee.

4

Case No. 8:02-CV-45-T-17TBM

The requirements for the application of res judicata are:
1) the prior judgment was rendered by a court of competent
jurisdiction; 2) the judgment is final and on the merits; 3)
there is an identity of the parties and their privies; and 4) the
later proceeding must involve the same cause of action in the
earlier proceeding.  See In Re Justice Oaks II, Ltd., 898 F.2d
1544 (11th Cir. 1990).


Appellant argued that the four requirements of res judicata
prevent Appellee from pursuing the preference claim.  The
application of res judicata bars the filing of claims that were
raised or could have been raised in an earlier proceeding.
Appellant argued that counsel for Debtor was found to be
"disinterested," all parties were aware of the facts giving rise
to the claim, but did not object to the award of attorney's fees.
Appellant also argued that the preference claim was not disclosed
in the Debtors' Plan and Disclosure Statement, and was barred by
entry of the final Confirmation Order.


Appellee argued that the requirements of identity of the
parties and identity of cause of action were not met.  Appellee
further argued that the Confirmed Plan authorizes the Disbursing
Agent to pursue all causes of action and any claim under section
544, 545, 547, 548, 550, 551 or 553 of the Bankruptcy Code, and
the final Confirmation Order appointed Appellee to prosecute and
defend pending causes of action as well as to institute causes of
action on behalf of the non-debtor corporations, the Debtors, and
the Debtors' estate.


5

Case No. 8:02-CV-45-T-17TBM

A.  Retention Order and Fee Petitions

Appellant argues that the issue of a preference should have been raised in the context of Appellant's retention or at a fee hearing.  See In Re First Jersey Securities, Inc., 180 F.3d 504 (3d Cir. 1999).

The Court notes that the Retention Order was entered ex parte long before Appellee was appointed.  Appellee never had an opportunity to challenge any of the facts on which the Retention Order is based.

Appellant argues that by the final fee hearing, all parties were aware of the facts giving rise to the potential preference claim, and Appellee made a tactical decision not to raise such claims at that time.

The Bankruptcy Court conducted the hearing as to Appellant's Fee Petitions on September 3, 1999.  The Bankruptcy Court was ruling only on applications covering post-petition services.  The Bankruptcy Court inquired as to the $61,000 and the $325,000 paid for pre-petition services to Appellant at the hearing.  In the summary judgment order, the Bankruptcy Court states:

> The Fee Applications sought payment for
> services rendered from the Petition date
> forward.  The doctrines of estoppel and res
> judicata are inapplicable in these
> circumstances since the Fee applications just
> concerned the value of services post-
> petition, and this Court approved the Fee
> Applications of Schulte Roth without
> adjudicating any pre-petition payments.
> Therefore, despite the disclosure by Schulte

6

Case No. 8:02-CV-45-T-17TBM

>            Roth of the pre-petition payments at issue,
>            the issue of pre-petition preferential
>            transfers could not have been raised or
>            litigated, and therefore, res judicata does
>            not apply.

At the hearing, Appellant testified that no services related
to the bankruptcy proceeding were rendered until March 17, 1998.
Appellant was paid for all prior services, and waived a pre-
petition retainer as to services related to the Chapter 11
proceeding.  In the Sabin Affidavit of March 30, 1998, Appellant
states it holds no claim or adverse interest against the Debtors.
Appellant explains that Appellant is negotiating with lenders for
possible debtor-in-possession financing which would provide funds
for Debtors' post-petition operations and payment of fees and
expenses of professionals in the chapter 11 cases.

Appellant represented Debtors for the bankruptcy proceedings
from March 17, 1998 until Appellant withdrew as counsel for
Debtors on April 26, 1999.  The Bankruptcy Court conducted the
hearing on September 13, 1999, and ruled on the fee petitions on
September 27, 1999.

Appellee was appointed as Disbursing Agent on July 23, 1999,
and the Plan was confirmed on August 3, 1999.  The role of the
Disbursing Agent is to conserve assets for distribution pursuant
to the terms of the Plan.  At the time of the fee hearing in
September, 1999, Appellee stated Appellee had standing to object
and stated Appellee's intention to pursue a preference claim
against Appellant.  The only objection articulated by Appellee
was a general objection directed to the amount of fees requested
for post-petition services, noting only that Appellant did not

7

Case No. 8:02-CV-45-T-17TBM

obtain a confirmed Plan. Appellee's objection was cumulative to
the written objections of the U.S. Trustee and the Unsecured
Creditors' Committee, who objected to the amount of fees based on
an excessive hourly rate and the number of hours claimed. The
U.S. Trustee stated that only a reduction of fees was requested,
not the disallowance of the award of fees. The objections of the
U.S. Trustee and the Unsecured Creditors' Committee acknowledge
the amounts of the pre-petition payments to Appellant, but do not
reflect any knowledge of source of the funds.

    The Bankruptcy proceeding in which the fee applications were
adjudicated was not a "mom and pop" type of case. Given the
complexity of the Harloff entities and the numerous claims which
Appellee pursued, there was not adequate time for discovery of
evidence as to the elements of a preferential transfer related to
the pre-petition payments. Knowledge of the material facts is
meaningless if there is no corresponding opportunity to gather
evidence. The Court does not consider the 40 day period of time
after Appellee's appointment to be a reasonable amount of time to
state all claims and meaningfully pursue discovery as to all
claims given the scope of the Harloff bankruptcy proceeding.

    Appellant has emphasized that fees cannot be awarded unless
counsel is disinterested. Appellant is concerned that the Court
overlooked the long line of cases which establish that fees
cannot be awarded to a party who is not disinterested. The Court
reassures Appellant that these cases were not overlooked.

    Appellant filed the Sabin Affidavit to establish that
Appellant was "disinterested." The Affidavit states that the two
pre-petition payments were made by Debtor within the ordinary

                                8

Case No. 8:02-CV-45-T-17TBM

course of business.    The retention order was entered, and the
fee awards were made, at a point in time at which there was no
pending claim and no liability by Appellant to the estate.    The
Bankruptcy Court's consideration of the pre-petition amounts was
directed only to clarification that the amounts were not paid for
bankruptcy-related services.    Until the adversary proceeding was
filed and the preferential transfer claim was adjudicated, there
was no claim and no liability as between the estate and Appellant
as to the pre-petition fees.    It was during the prosecution of
the preferential claim that the opportunity to marshal the
evidence supporting the elements of a preferential transfer
through discovery came to Appellee.

       Appellant has argued that the order awarding attorney's fees
was final and appealable.    Appellee did not appeal the Order, but
later filed the preferential transfer action.    An appeal of the
Order would have been a review of the Bankruptcy Court's
adjudication at a time when Appellee was not in a position to
provide any evidence, just an opinion, as to the existence of a
preferential transfer.    During the appeal, Appellee could not
have provided evidence obtained <u>after</u> the ruling of the
Bankruptcy Court, only that which was available to the Bankruptcy
Court at the time of that ruling.    The Court considers the
factual scenario in this case to be one in which it would be
appropriate to grant relief from a final judgment on the basis of
newly discovered evidence.

Case No. 8:02-CV-45-T-17TBM

    Appellant has complained that Appellant was "sandbagged" by
Appellee's decision to file the adversary proceeding after the
fee award became final because Appellant lost the opportunity to
appeal the substantial reduction of Appellant's post-petition
fees.   The Court notes that if Appellant was not personally
present during the discussion of preferential transfer at the fee
hearing, Appellant's co-counsel could have advised Appellant of
what transpired, or Appellant could have obtained a transcript.
Appellant created the preferential transfer problem when
Appellant represented that the Debtors paid Appellant in the
ordinary course of business for his services when in fact a third
party paid Appellant $325,000.  Appellant established to the
satisfaction of the Bankruptcy Court the value of Appellant's
post-petition services, but that does not mean that money
collected by Appellant for pre-petition services is immune when
the elements of a preferential transfer are later established in
the record.  Consideration of a fee application is directed to
nature and quality of the legal services rendered by Appellant.
The adjudication of a preferential transfer involves
consideration of different material facts than a fee application.
At the time of the adjudication of the fee applications, there
was no evidence in the record to support the existence of the
preferential transfer claim, and therefore at that time Appellant
was properly found to be "disinterested," an implicit finding in
every fee award.

    The Court affirms the entry of summary judgment by the
Bankruptcy Court as to this issue.  The Court still does not see
where in the record Appellant disclosed the true source of the
pre-petition payment of $325,000.  However, since this is not a
Section 329 case, the Court will set aside its reliance on that

Case No. 8:02-CV-45-T-17TBM

fact.   To the extent that Appellee was aware of the source of the
funds but did not raise an objection at the fee application
hearing, the Court finds that Appellee gained the ability to
discover the facts underlying the preference claim and to create
a record supporting the claim by filing the adversary proceeding.
The Court finds that res judicata as to the retention order and
fee award does not bar this claim.

B.    Plan and Confirmation Order

        The Court has considered whether the language of the
Confirmed Plan and of the Confirmation Order is sufficiently
specific to prevent the application of res judicata.   The Court
has noted the discussion of this issue in In Re Transit Group,
Inc., 332 B.R. 45 (Bankr. M.D.   Fla. 2005), In Re Pen Holdings,
Inc., 316 B.R. 495 (Bankr. M.D. Tenn. 2004), and In Re Bridgeport
Holdings, Inc., 326 B.R. 312 (Bankr. Del. 2005).

        Specific reference to a particular defendant or the factual
basis of the claim is not required to preserve the claim.   After
consideration, the Court finds that this preference action was
preserved by the language of the Plan and Order as set forth
above, and res judicata does not apply as to the Plan and
Confirmation Order.

C.    Material Fact Issues

        Appellant argues that there are numerous disputed issues of
material fact which precluded the entry of summary judgment by
the Bankruptcy Court.

Case No. 8:02-CV-45-T-17TBM

1.  Ordinary Course of Business

     Appellant argues that the pre-bankruptcy relationship
between Debtors and Appellant was too short to prove an
established course of business without any fact issue, and
consideration of industry standards also raises fact issues.

     The test for entry of summary judgment is whether the record
establishes the presence of material disputed factual issues.
Since the ordinary course of business is a defense, the burden
was on Appellant to establish that the payment was within the
ordinary course by a preponderance of the evidence.

     The Order of the Bankruptcy Court discusses the various
defenses asserted by Appellant, including the defense of payments
made in ordinary course of business and made according to
ordinary business terms.  The Bankruptcy Court relied on <u>Marathon</u>
<u>Oil Co. v. Flateau (In re Craig Oil Co.)</u>, 785 F.2d 1563 (11th Cir.
1986).  The Bankruptcy Court analyzed the issue based on: 1) the
prior course of dealing between the parties; 2) the amount of the
payments; 3) the timing of the payments and 4) the circumstances
surrounding the payments.

     The Bankruptcy Court found that Appellant did not send
monthly invoices as indicated by the retention letter.  As to the
first invoice, the Bankruptcy Court found that it was paid a few
days outside the time frame required by the retention letter, and
was paid by a check from Debtors to Appellant.  The Bankruptcy
Court found that the preference action should be dismissed as to
the first invoice of $60,914.44, without prejudice for Appellee
to seek consideration of whether compensation for the services

                                12

Case No. 8:02-CV-45-T-17TBM

rendered in contemplation or in connection with the case exceeds
the reasonable value of the services by motion pursuant to 11
U.S.C. Sec. 329.

As to the transfer of $325,000, the Bankruptcy Court found
that the invoice of March 13, 1998 in the amount of $303,270.25
was not paid by "each of the Harloff entities" as required by the
retention letter, but by the wire transfer of a third party,
Marano. The balance of the wire transfer proceeds was applied
against a portion of the fees and expenses incurred by Debtors
during March 1, 1998 through March 30, 1998, although this was
not indicated on any invoice.

The Bankruptcy Court found that the transfer was not made in
the ordinary course of business, nor was it made pursuant to
industry norms. The Bankruptcy Court further found that there
was no record evidence that payment of the Debtor to an attorney
for fees on the eve of filing the Petition for relief in
bankruptcy, made not by Debtor but by a third party is a payment
in the ordinary course of business. The Bankruptcy Court
considered the previous dealings between the parties, but found
no evidence that the method of payment to Appellant was ever made
before the particular payment at issue.

The Bankruptcy Court evaluated the Warren Affidavit, which
states that it is in the ordinary course of business for a
Chapter 11 debtor to pay his last invoice just prior to the
filing of a petition; otherwise, the attorney would be a creditor
and disqualified from representation of the debtor. The
Bankruptcy Court found that the Affidavit is vague as to industry
standards.

13

Case No. 8:02-CV-45-T-17TBM

The Court has examined the Cross-Motion for Summary
Judgment, with its supporting documents.   The Warren Affidavit
states that the pre-petition payments received by Appellant were
made and received in the ordinary course of business, based on
the engagement agreement, the pattern of business between
Appellant and their clients, the Harloff entities and based on
the knowledge and experience of the general business relationship
between a Chapter 11 debtor and its counsel.   The Affidavit
concludes that it is in the ordinary course of business for a
Chapter 11 debtor to pay his last invoice just prior to the
filing of a petition; otherwise the attorney would be a creditor
and disqualified from representation of the debtor.

The Court has considered the discussion of industry
standards in In Re Molded Acoustical Products, Inc., 18 F.3d 217
(3rd Cir. 1993).  Sec. 547(c)(2) C) requires the creditor to prove
by a preponderance of the evidence that the transfer was in
accord with an objectively determinable industry standard.   The
Third Circuit cited In Re Tolonna Pizza Prods. Corp, 3 F.3d 1029
(7th Cir. 1993): "[O]rdinary business terms" refers to the range
of terms that encompasses the practices in which firms similar in
some way to the creditor in question engage, and that only
dealings so idiosyncratic as to fall outside that broad range
should be deemed extraordinary and therefore outside the cope of
subsection C."   3 F.3d at 1033.

The Third Circuit Court of Appeal further states that "where
the relationship is of recent origin, a significant departure
from credit terms normal to the trade bears the earmarks of
favoritism and/or exploitation, and to countenance such behavior
could be unfair (or could appear unfair) to the remaining

14

Case No. 8:02-CV-45-T-17TBM

creditors who exhibit the virtue of patience." So, the Third
Circuit adopted the construction that "the more cemented the pre-
insolvency relationship is between the debtor and the creditor,
the more the creditor will be allowed to vary its credit terms
from the industry norm yet remain within the safe harbor of 547
( c) (2)." The Court also notes the analytical process in <u>In Re
L. Bee Furniture Co., Inc.</u>, 250 B.R. 757 (M.D.  Fla. 2000).

Appellant has argued that the testimony of Jeffrey Sabin and
the Warren Affidavit raise an issue of material fact as to
whether the pre-petition payment was in the ordinary course of
business.

In the Deposition of Jeffrey Sabin, Mr. Sabin testified:

Q.  Do you know whether or not Mr. Harloff had
previously in his business presold his crop in the
field.

A.  Absolutely, the answer is yes.

Deposition of Jeffrey Sabin, taken March 2, 2001, at 103.

The Court does not agree that the Warren Affidavit and the
Sabin Deposition raise an issue of material fact. The burden was
on Appellant to provide probative evidence as to industry
standards for the consideration of the Bankruptcy Court. The
Bankruptcy Court found that the Warren Affidavit was vague as to
"industry standards" and also that there was no record evidence
that payment on the eve of filing of bankruptcy proceedings made
not by the Debtor but a third party was in accordance with
industry norms. The creditor in this case is a law firm
rendering legal services to Debtors. The industry norm is for a
law firm to enter into an agreement with the law firm's client

15

Case No. 8:02-CV-45-T-17TBM

which spells out how the client will pay for the law firm's
services before the services are rendered.  When services related
to restructuring and the filing of bankruptcy proceedings are
rendered to a debtor, the norm is for the debtor to pay for the
services, in the absence of some other agreement.  In fact,
Appellant and the Debtors had an agreement, but the payment by a
third party was a deviation from the agreement.  The Court notes
that the pre-petition relationship between Appellant and the
Debtors lasted from November, 1997 until March 30, 1998, and only
two payments were at issue.  In the absence of a long-standing
relationship, the Court finds no error in the Bankruptcy Court's
analysis and conclusion.  Accordingly, it is

     ORDERED that the Motion for Reconsideration (Dkt. 19) is
denied.

     DONE and ORDERED in Chambers, in Tampa, Florida on this
day of June, 2006.


                         ELIZABETH A. KOVACHEVICH
                         United States District Judge

Copies to:
All parties and counsel of record